Daniel O. Gehr and Annie M. Wiestling, Shareholders and Creditors of Mont Alto Iron Company for themselves and any other shareholders and creditors of said company, v. Mont Alto Iron Company—E. S. Wiestling, President ; E. B. Wiestling, Secretary and Treasurer; D. O. Gehr, W. B. McDowell and Tench McDowell, Directors of the Mont Alto Iron Company.

The appellants are the National Bank of Chambersburg and other general creditors of the Mont Alto Iron Company. The appellees are W. Gehr and Charles E. Coffin, trustees for the mortgage bondholders of the Mont Alto Iron Company and other creditors of said company.

*Corporations—Receiver—Distribution of estate.*

Where a corporation in the hands of a receiver is insolvent without possibility of rehabilitation, and there is nothing to do but to convert its assets and distribute them equitably, the bondholders of the corporation, although their bonds are not due, are entitled to participate with the general creditors in the distribution of the fund raised by the sale of material which the receiver has manufactured from raw product belonging to the corporation, and in the fund raised by the sale of the real estate of the corporation.

*Corporation—Receiver—Taxes.*

Where a corporation engaged in the iron business is hopelessly insolvent, and in the hands of a receiver, taxes which have accrued during the time that the receiver was manufacturing raw product into finished material in order to facilitate the sale of the company's property, should be paid in full.

Argued March 10, 1896. Appeal No. 113, Jan. T., 1896, by the National Bank of Chambersburg and other general creditors of the Mont Alto Iron Company, from order of C. P. Franklin Co., in equity, dismissing exceptions to auditor's report. Before STERRETT, C. J., WILLIAMS, McCOLLUM, MITCHELL and FELL, JJ. Affirmed.

Exceptions to auditor's report.
The auditor, G. D. McDowell, reported :

### FINDING OF FACTS.

That David Knepper was appointed receiver of the Mont Alto Iron Company on the 31st day of December, 1891, and as receiver filed his first and partial account on the 9th day of August, 1892; that an auditor was appointed to make distribution of the balance in said first and partial account and his report was confirmed November 14, 1892.

That the Mont Alto Iron Company is a corporation duly incorporated under the laws of Pennsylvania with a capital stock of $150,000, divided into one hundred and fifty shares of the par value of $1,000 each; having been incorporated September 6, 1889.

That its business and for which it was incorporated is the manufacturing of steel or iron, or both, or any article of commerce from metal or wood; to purchase, lease, mortgage or sell real estate or mineral rights; to construct buildings, and, in fact, all things necessary for the manufacture of iron, steel, and other metals in any shape or form and its shipment to market.

That the realty of the Mont Alto Iron Company consists of eighteen thousand three hundred and twenty-eight acres, three hundred and twenty acres of which are used for farming purposes; the remainder consisting mostly of timber land and upon which are located the buildings, mines, etc., necessary for the production of iron, steel, and the other purposes included in its charter.

That on the 4th day of April, 1890, the said Mont Alto Iron Company executed a mortgage to Hastings Gehr and Charles E. Coffin, trustees to secure the full and final payment of one hundred and fifty bonds of the value of $1,000 each; that this mortgage is a lien on all the real estate of the said company and covers all its personalty as well.

That the aforesaid bonds have coupons attached, and bear interest at the rate of five per centum per annum, payable semi-annually on the first days of February and August of each and every year, and are redeemable August 1, 1909.

That none of the coupons attached to the bonds have been paid since August 1, 1891.

That the mortgage, given by the Mont Alto Iron Company to Hastings Gehr and Charles E. Coffin, trustees to secure the payment of its bonds, is made payable August 1, 1909; that

foreclosure could be had on this mortgage for default of payment on the bond coupons but no effort has ever been made to do so.

That there are unpaid state and county taxes, also unpaid school and road taxes owing by the Mont Alto Iron Company; their respective amounts, kinds, and the years for which they were assessed are fully set forth in the schedule of distribution. All of said taxes were assessed since the appointment of the receiver.

That in reference to these said taxes the master and examiner in his report found as a conclusion of law "that none of the unpaid county, school and road taxes are liens upon the real estate of the Mont Alto Iron Company; and further, that as they all have been assessed since the appointment of the receiver, they are incidental and unavoidable expenses connected with the conduct of the affairs of the Mont Alto Iron Company by the receiver, and incurred during his efforts to wind up its affairs, and that the personal property in the hands of the receiver is liable for their payment."

That Henry Daniels offers a claim against the company for threshing grain and asks that the same be paid in full as a preferred labor claim. That the said claim was presented to the auditor in the distribution of the first and partial account and disallowed by him as a preferred labor claim.

That the Mont Alto Iron Company is largely insolvent.

CONCLUSIONS OF LAW.

1st. The audit costs should first be paid.

2d. The state and county, school and road taxes assessed since the appointment of the receiver should be paid in full.

3d. That as the mortgage given to secure the bondholders embraces both the real and personal property of the Mont Alto Iron Company, the face value of the bonds as also the unpaid coupons due upon said bonds, should be entitled to a pro-rata distribution of the fund as well as the general creditors.

Exceptions to the auditor's report were dismissed ·by the court, STEWART, P. J., filing the following opinion:

The insolvency of the Mont Alto Iron Company was alleged and admitted when the receiver was appointed. The appointment was not made to bridge over an emergency and continue·

the business of the company, but that the assets of an insolvent concern might be held, preserved and distributed in an equitable manner to and among those entitled thereto. The business of the corporation was the manufacture of charcoal iron. It owned a furnace and a landed estate from which it derived its supply of ore and coal. When the receiver was appointed, it had on hand a considerable quantity of mined ore and charcoal. There was no adequate or compensating market for the raw materials, and it was apparent to the court that if these were to avail the creditors at all, it would have to be by employing them in the manufacture of iron at the company's furnace. The receiver under authority obtained from the court, continued to operate the furnace until these supplies were exhausted. It is now nearly four years since the receivership began, and as appears by the second account, which is now before us for consideration, nearly all the assets, not including the real estate, have been converted. The fund for distribution arises from the sale of iron, farm products and other personal property, and the main controversy is between the general creditors of the company and the holders of certain bonds amounting to $150,000, which are secured by a mortgage on the real estate. The effort on the part of the general creditors is to exclude the bonds from participation, on the ground that, inasmuch as they do not mature until 1909, their payment is not now demandable. This position mistakes the nature and character of the receivership, and the character of the fund for distribution as well. It may be that where a receiver is appointed to avoid a temporary suspension or interruption of the business, which would likely prove disastrous to all interests, as in case of a railroad, general creditors would be allowed preference over the bondholders, in the net proceeds realized by the receiver from the conduct of the business, on the principle, that the status of all parties in interest is to be preserved with a view to a restoration of the concern to its own proper management. In such cases no injustice is done the bondholders by excluding them from participation in the distribution of the income. But that is not this case. Here the corporation was confessedly insolvent, without possibility of rehabilitation, and there was but one thing to do, convert its assets and equitably distribute them. The fund for distribution can in no sense be called income or earnings; it

results from sales of materials, manufactured iron, products from the land or general personal property, all indicating a final winding up of the business of the concern.   In said case, the functions of the receiver are hardly distinguishable from those of an assignee, except that the receiver acts at all times under the immediate direction and authority of the court; and indeed the whole proceeding assimilates itself to an assignment for the benefit of creditors.   Were this an assignment by the Mont Alto Iron Company, no question could have arisen as to the right of the bondholders to come in upon the fund, notwithstanding their bonds were not due.   We fail to see why they should be in less favorable position under a receivership.

The auditor allowed them to participate, and in this we think he was right.

Holding to this view, we can see no reason why the receiver should make any distinction between what was derived from sales of personal property, and what was derived from the land; between what was expended for the conversion of the one, and what was expended in the maintenance and preservation of the other.   It is not a case of two distinct funds, each belonging to a distinct class of creditors, but a common fund from which all expenses are to be taken, leaving a remainder in which all creditors are to participate ratably.

The auditor has allowed the taxes in full which were assessed during the period covered by the receivership.   In this we think he was correct also.   If the labor and other expenses incident to conducting the business of the furnace and the farms is to be paid by the receiver, why not the taxes?   All are alike debts incurred by the court in the administration of the trust.

Exception is taken to several findings of facts by the auditor which, in view of what we have already said, it is not necessary to inquire into.   Whatever the truth be with respect to them, the conclusions indicated would in no wise be affected thereby. In other words, the disputed facts are not material.

We therefore overrule all the exceptions to the auditor's report, not including however that which relates to the claim of Henry Daniels.   The presentation of this claim before the auditor who distributed the balance on a former account, and the acceptance of a pro rata distribution, should not preclude

the claimant from now insisting upon his right to a preference of wages. The auditor should have passed upon his question of right of preference.

We think his claim fully established by the evidence; but to send the report back for correction in this matter, would delay the distribution of a larger fund. This can be avoided by allowing this claim to await the next or final distribution, and this we propose to do. [And now, March 12, 1895, all exceptions to the report of George D. McDowell, Esq., auditor, appointed to pass upon exceptions to the second account of David Knepper, receiver of the Mont Alto Iron Co., and make distribution of balance, are dismissed, saving however to Henry Daniels the right to submit his claim for wages as a preferred claim before the auditor who may be appointed to make another and further distribution of the assets of the Mont Alto Iron Co. without prejudice, and the report of the auditor is now confirmed, and the receiver, David Knepper, is ordered to pay out the funds in his hands, in accordance therewith.] [7]

*Errors assigned* among others were (7) decree of the court as above, quoting it; (8) in allowing the mortgage and coupons to participate in the distribution; (9) in allowing the taxes assessed against the real estate to participate in the distribution.

*Walter K. Sharpe*, of *Sharpe & Sharpe*, for appellants.—A receiver is an officer of the court, appointed to receive and preserve the property or fund in litigation, such property is regarded as being in custodia legis: High on Receivers, secs. 1, 2, 134; Robinson v. Atlantic & G. W. Ry., 66 Pa. 160; Daniels' Chancery Pleading and Practice, Perkins ed. vol. 2, p. 1409; Beach on Receivers, secs. 5, 298, 404.

The funds in the hands of a receiver can be distributed only to the present liabilities, viz.: those due and demandable.

The property never having been levied upon by the tax collectors, the taxes were not a lien upon such property, for, until actual seizure by the collector, taxes are not a lien upon personal property: Wright v. Wigton, 84 Pa. 163.

*W. Rush Gillan* and *O. C. Bowers*, *Gehr & Gehr*, *Horace Bender*, *Ellis E. Foust*, *E. J. Bonbrake* and *S. B. S. Stover* with

them, for appellees, cited on behalf of the holders of the bonds and coupons : Marriott v. Givins, 8 Ala. 694; Cormerias v. Genella, 22 Cal. 116; McDonald v. Vinson, 56 Miss. 497; Noell v. Gaines, 68 Mo. 649.

Cited for the tax claimants : Union Trust Co. v. Illinois Midland Ry., 117 U. S. 434; Miltenberger v. Logansport Ry., 106 U. S. 286; 20 Am. & Eng. Ency. of Law, 436; Central Trust Co. v. Wabash etc. R., 26 Fed. Rep. 11; Georgia v. Atlantic etc. R. R. Co., 3 Woods U. S. 434; Phila. etc. R. Co. v. Com., 104 Pa. 80; Com. v. Runk, 26 Pa. 235; Wright v. Wigton, 84 Pa. 163; Robinson v. Atlantic & G. W. Ry., 66 Pa. 160.

PER CURIAM, March 23, 1896 :

Our consideration of the questions presented in this record has satisfied us that neither of the specifications of error should be sustained.

Nothing can be profitably added to what was said by the learned president of the common pleas in disposing of exceptions to the auditor's report and decreeing distribution of the fund in court. The decree is therefore affirmed on his opinion and appeal dismissed, with costs to be paid by appellants.