UNION TRUST CO. v. GREAT EASTERN LUMBER CO. et al.

(Circuit Court of Appeals, Fifth Circuit. January 15, 1918.)

No. 3095.

1. JUDICIAL SALES ⬦═50(2)—PAYMENT OF TAXES—DIRECTION.
    The purchaser at a sale under judicial decree, which does not order the property sold free from the lien of taxes, takes it subject to the tax lien.

2. RECEIVERS ⬦═153—PAYMENT OF TAXES.
    Property in the hands of a receiver is ordinarily bound for payment of taxes, and, in view of the paramount lien of taxes, it is the duty of the court to order them paid, no matter how the claim may be brought to its attention.

3. RECEIVERS ⬦═153—OBLIGATIONS OF—TAXES.
    Taxes accruing during a receivership are obligations or indebtedness of the receiver.

4. JUDICIAL SALES ⬦═50(2)—DECREE—CONSTRUCTION.
    A decree directing judicial sale of property declared that all liens allowed were subject to any lien that might exist for state, county, and municipal taxes. Other portions of the decree provided for preferential payments of liens out of the proceeds, specifying court costs, receiver's certificates, indebtedness, and obligations. *Held*, in view of the fact that the holder of what was evidently an assigned tax lien was given priority and the property was sold free from it, the decree must be construed as directing a sale of the property free from the lien of taxes and payment thereof out of the proceeds, for taxes accruing during receivership were included in the indebtedness and obligations of the receiver.

Appeal from the District Court of the United States for the Southern District of Georgia; Wm. Wallace Lambdin and Emory Speer, Judges.

Bill by the Union Trust Company against the Great Eastern Lumber Company and others. On petition of commissioners to sell, payment of taxes was directed, and complainant appeals. Affirmed.

W. L. Clay and Fred T. Saussy, both of Savannah, Ga., for appellant.

Geo. T. Cann, J. Ferris Cann, and Gordon Saussy, all of Savannah, Ga., for appellees.

Before WALKER and BATTS, Circuit Judges, and GRUBB, District Judge.

GRUBB, District Judge. The sole question presented by the appeal is whether the terms of the decree of foreclosure and sale required the purchaser at the sale to assume payment of the taxes due on the property to be sold, or whether the property was sold free from the tax lien and the taxes were ordered by the decree paid out of the proceeds of the sale.

[1, 2] The purchaser at a sale under a judicial decree, which does not order the property sold free from the lien of taxes, takes the property subject to the tax lien. In that respect the rule of caveat emptor applies. The question depends upon the proper construction

⬦═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

of the decree in each case. In the case of Railway Co. v. Harrison, 96 Fed. 910, 37 C. C. A. 616, the Circuit Court of Appeals for the Seventh Circuit, after stating the rule as above, said:

"Exception to this general rule undoubtedly arises in equity in the following instances: First, where the decree or order for the sale expressly provides for discharging liens or other claims against the property out of the proceeds or other funds coming into court, or where the proceedings or provisions are otherwise inconsistent with such rule; and, second, where there is fraud, concealment, or unfair dealing in the proceedings, which entitle the purchaser to equitable relief."

In the case of First National Bank v. Ewing, 103 Fed. 168, 43 C. C. A. 150, this court said, referring to the status of taxes due on property in the court's custody:

"And it seems to be settled law that such liens are prior to all other liens whatsoever, except judicial costs, which are first to be paid where the property is rightfully in the custody of the court. 'It is the imperative duty of the court,' said Mr. Chief Justice Fuller, in the case of In re Tyler, 149 U. S. 187, 13 Sup. Ct. 791, 37 L. Ed. 696, 'to recognize as paramount, and enforce with promptness and vigor, the just claims of the authorities for the prescribed contributions to state and municipal revenue.' Georgia v. Atlantic & C. R. Co., 3 Woods, 434, Fed. Cas. No. 5,351; Union Trust Co. v. Illinois M. Ry. Co., 117 U. S. 434, 6 Sup. Ct. 809, 29 L. Ed. 963. And it is immaterial how the claim for taxes may be brought to the attention of the court—whether by the receiver, the master appointed in the cause, the tax collector, or through intervening petitions filed by the state and municipalities interested. In any case, and whenever properly brought to the court's attention, they should be promptly paid."

In 34 Cyc. 346, the lien of taxes on property in the hands of a receiver, and the court's duty to direct their payment, is thus expressed:

"*Taxes.*—Property in the hands of a receiver of any court, either of a state or of the United States, is as much bound for the payment of taxes, state, county, and municipal, as any other property. Generally a valid tax upon property of a corporation in the hands of a receiver constitutes a claim upon its assets within the jurisdiction, superior to every other claim, except judicial costs. It is the duty of the court not only to respect this paramount right, and to make no order for the distribution of assets in custodia legis, except in subordination thereto, but also to make such orders as will compel the receiver to discharge this obligation."

The question, therefore, is whether or not the decree of sale in this case, construed with reference to its language, and in the light of the paramount lien of taxes on property in the court's custody and of the imperative duty of the court to order the taxes paid, no matter "how the claim for taxes may be brought to the attention of the court, whether by the receiver, the master appointed in the cause, the tax collector, or through intervening petitions filed by the state and municipalities interested," provides for the payment of the taxes out of the proceeds of the sale.

[3, 4] There is no express provision of the decree ordering a sale free from the lien of taxes, nor is there any express provision in the decree ordering a sale subject to the tax lien. Section 25 of the decree provides that "all liens herein allowed are subject to any lien that may exist for state, county, and municipal taxes." This is the only provision of the decree directly providing for the status as to taxes. It

is to be observed that this provision precedes those relating to the sale of the mortgaged property and the terms thereof, and appears in connection with those provisions which adjudicate the claims against the property and its owner, and the order of their priority of payment out of the proceeds of the sale. The effect of paragraph 25 is to adjudge that all previously adjudicated preferential payments shall be subordinated to the payment of tax liens. And as the other preferential payments are to be paid from the proceeds of the sale, it is fair to assume, from the position of paragraph 25 and its language, that it is rather a direction to pay tax liens out of the same proceeds, and before the other claims, than a provision that the property is to be sold subject to tax liens. The language is not apt to subject the property in the hands of the purchaser to the tax lien. It subordinates other adjudicated claims to the lien of taxes, but does not order the property sold subject to the lien for taxes. No other paragraph of the decree directly relates to the question of tax liens.

Other paragraphs indirectly throwing light on the question are:

Paragraph 13 adjudges that G. K. Westbrook, Jr., recover of defendant $280.11, with interest, and that he have a first lien, ranking as a tax lien, upon all the property of defendant. This lien was to be paid out of the proceeds and the property sold free from it. Yet it was evidently an assigned tax lien, or it would not have been accorded that rank. If the purpose of the court was to sell the property subject to tax liens, it would have been natural for it to have given Westbrook's lien the same treatment, instead of directing its payment out of the proceeds of the sale and giving it priority of payment therefrom.

Paragraph 34 of the decree provides that the purchaser, before using any bonds for paying purchase money, is to pay "in cash, to the extent of his bid, such amount as may be necessary to discharge all costs, and all prior and equal allowances, claims, or liens." Paragraph 34 follows paragraph 25, and those preceding paragraph 25, which fix the amounts and order of payment of allowances, claims, and liens, and paragraph 25 characterizes the amounts due for taxes as "liens" and as being prior to those preceding it in the decree. Paragraph 34 would therefore seem to include the payment of tax liens from the cash required to be paid by the purchaser.

Paragraph 36 provides for the distribution of the fund created by the sale of the property. It provides for the payment (1) of costs of court, receiver's certificates, indebtedness and obligations; (2) of certain items named, if thereafter determined by the court to rank as costs of administration; (3) to the payments of amounts adjudged in favor of the various interveners, "but only to the extent and priority herein adjudicated and allowed; said liens to be satisfied in the order or rank of priority herein adjudged."

(1) This clause mentions (a) receiver's certificates, (b) receiver's indebtedness, and (c) receiver's obligations. Taxes could not come under (a), but might well come under (b) or (c). That taxes, accruing during a receivership, are obligations or indebtedness of the receiver, is supported by the text of 34 Cyc. pp. 346, 347 (b, "Taxes"), citing Wiswall v. Kunz, 173 Ill. 110, 50 N. E. 184, and Gehr v. Mont Alto

Iron Co., 174 Pa. 430, 34 Atl. 638, which support the text. In the latter, the business was conducted by the receiver; in the former, the report does not show with certainty whether it was or not, but presumably it was not. It would seem that the terms receiver's "indebtedness" and "obligations" were broad enough to cover taxes accruing against the property while in the control of the court, and which by subdivision 1 of paragraph 36 of the decree the fund was required to pay.

(2) The second subdivision of paragraph 36 shows that, while the court, in the paragraphs preceding 25, had adjudicated the exact amounts of allowances, claims, and liens due interveners and others, it did not intend to decree payment of these exact amounts from the proceeds of the sale absolutely, but only after the costs of court, receiver's indebtedness, and expenses of the sale were deducted, and these were not only of uncertain amount, but it was left for the court to determine in the future whether the items mentioned in subdivision 2 should rank as costs of the administration of the cause at all. There could, therefore, be no ascertainment under the decree of the amounts each intervener or claimant was to receive, not only until after a computation by the clerk, but also until after further and future judicial ascertainment and approval of the costs of administration and of the receivership. The fact that the decree did not ascertain the amount of tax liens, but left this to future ascertainment, as in the case of the other mentioned items of costs of administration, is not, therefore, inconsistent with the general tenor of the decree.

(3) The third subdivision is to be construed in view of the tentative character of the decree in these respects. It directs that the purchase money be applied to the "payment of the amounts herein adjudged due the several interveners, and for which it is herein adjudged they are respectively entitled, * * * but only to the extent and priority herein adjudicated and allowed; said liens to be satisfied in the order or rank or priority herein adjudged." This would seem to mean that the adjudicated claims and liens of interveners were to be paid out of the proceeds of the sale, only after prior charges and liens were paid, and section 25 expressly subordinated the lien of the interveners, which had theretofore, in the decree, been fixed in amount, to the lien of taxes. So, whether taxes be considered obligations or indebtedness of the receiver under the first subdivision of paragraph 36, or liens under paragraph 25, the same result would seem to follow, viz. that paragraph 36 did not direct interveners' adjudicated claims to be paid out of the proceeds until after tax liens had been satisfied therefrom. The first amount adjudged to an intervener and directed to be paid out of the fund by paragraph 36, it will be observed, is a "lien ranking as a tax lien."

The court below framed the decree with the purpose in view of distributing the proceeds of the sale, first, among certain classes of claims, the amounts of which had not been fixed, such as court costs, costs of administration, to be thereafter determined, receiver's certificates, indebtedness, and obligations, and taxes, as part thereof, or under section 25, the amounts of which were also to be thereafter determined;

248 F.—4

second, to certain classes of interveners and court officers, whose claims were fixed in amount and prior to the mortgage, but only to be paid after payment of the first class in full out of the fund, and ratably and according to priority, if the fund so reduced was insufficient to pay all in full; third, to the trustee for the bondholders; and, fourth, the surplus, if any, to the mortgagor, defendant. The decree did not attempt to arrive at the amount for distribution among the interveners, whose claims were adjudicated in amount, or to the mortgagee, until after further adjudication of the amounts necessary to satisfy court costs, costs of administration, receiver's debts, and taxes had been had. The master's report shows that information as to the amount of taxes and persons to whom due was not available to the court when the decree was passed, and hence this matter, as well as the status of the items of cost of administration mentioned in subdivision 2 of paragraph 36, were left to be fixed as to amount or status after the decree was entered.

This view is not only consistent with the frame of the decree, but with the recognized duty of the court, which had displaced the usual remedies for the collection of taxes by the receivership, to provide for the payment of taxes out of the proceeds of the sale, and not to remit the tax authorities to a belated use of their remedies against the property after it had passed out of the court's possession into that of the purchaser, and the presumption that the court in framing the decree acted in the light of this duty.

Entertaining these views of the proper construction of the decree, we think the order appealed from was correct, and should be affirmed; and it is so ordered.