**HAMMOND et al. v. CARTHAGE SULPHITE PULP & PAPER CO.**

**UNITED STATES MORTGAGE & TRUST CO. v. CARTHAGE SULPHITE PULP & PAPER CO. et al.**

(Circuit Court of Appeals, Second Circuit. May 21, 1925.)

No. 363.

**1. Corporations ☞477(1) — Mortgage covering real and personal property held valid as to real estate.**

A mortgage given by a New York manufacturing corporation to secure an issue of bonds covering both its real and personal property, and recorded as a real estate mortgage, *held* not invalid as to the real estate described therein because of provisions excluding the raw material acquired or taken from its lands and used in its manufacturing, and permitting the corporation, prior to any default, to sell its products and retain the proceeds.

**2. Corporations ☞479—Mortgage trustee's right to reimbursement for taxes paid as affected by receivership, defined.**

Where a decree foreclosing a mortgage on the property of a corporation, for which a receiver had been appointed in a creditor's suit, directed payment of taxes from the proceeds of the sale, the mortgage trustee was merely a contract creditor of the corporation for the amount paid for taxes levied before the receivership, which were unpaid through default of the mortgagor, but those levied after appointment of the receiver were expenses of the receivership, and the trustee was entitled to reimbursement from any funds applicable to such expenses.

**3. Corporations ☞478—Claim in suit by mortgagor passes as "chose in action."**

A claim in suit by a corporation when it executed a mortgage *held* included in the property mortgaged under a clause covering "choses in action."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Chose in Action.]

**4. Corporations ☞478—Interest of cestui que trust in land not "realty."**

A mortgage by a New York corporation of its real estate, then owned or thereafter acquired, *held* not to cover land in Canada, to which it never had title, though the holder of the legal title, subsequently acquired, held it in trust for the corporation; its interest therein not being "realty" under the law of New York.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Real Property.]

**5. Fixtures ☞22—Unrecorded conditional sale contract held void as against subsequent mortgagee.**

An unrecorded contract for conditional sale of boilers, to be attached to a building *held* void as against a subsequent mortgagee of the realty in good faith, under Personal Property Law of New York, § 62, as it stood in 1921 (Consol. Laws N. Y. c. 41), when the mortgage was executed.

Appeal from the District Court of the United States for the Northern District of New York.

Creditor's bill by Reginald F. Hammond and others and foreclosure suit by the United States Mortgage & Trust Company, trustee, against the Carthage Sulphite Pulp & Paper Company. From the final decree, Hammond and others, as unsecured creditors, and the Union Iron Works and the United States Mortgage & Trust Company, appeal. Modified.

The suit first above entitled is a general creditors' bill, under which a receiver was appointed for the affairs of the Carthage Company.

The court having thus taken jurisdiction, the suit next above named was brought by the United States Mortgage & Trust Company to foreclose a mortgage given by Carthage Company about three years before the filing of the creditors' bill.

Carthage Company is a corporation of the state of New York; the mortgage in question was a corporate mortgage, intended in the usual way to support an issue of bonds, United States Mortgage & Trust Company taking the mortgage as trustee.

The mortgage specifically covered numerous parcels of realty situate in Jefferson county, N. Y., and it is admitted that it was well filed as a real estate mortgage in that county. The mortgage also specifically hypothecated by name certain shares of stock in certain corporations, and then continued in the habendum clause to transfer to the trustee—

"All of the incomes, interest, dividends, revenues, contributions, receipts, and returns, contracts, leases, claims, accounts, demands, choses in action, books of account and contract rights of all kinds belonging to the corporation, now owned or hereafter acquired.

"Also all stores, repair parts, stock in trade, materials and supplies, and all other property, rights, privileges, franchises, licenses, easements and permits of any and every kind and description, real, personal and mixed, of the corporation, wheresoever the same may be situated and not hereinbefore specified or referred to, whether now owned or hereafter acquired, with the tenements, hereditaments and appurtenances thereto belonging or in any wise appertaining, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof.

"It being intended that all property, real, personal and mixed, of any and every kind and character, which the corporation now owns, and all property which it may hereafter acquire, and howsoever acquired, shall be subject to the lien of this indenture, with like tenor and effect as though now owned by the corporation and as though covered and conveyed hereby by specific and apt descriptions.

"Provided, nevertheless, that (except as hereinafter provided in article III hereof), no pulp, wood pulp, or other raw material or material in process of manufacture, repair parts, repair material, supplies, commodities constituting the whole or any part of any stock kept for sale, accounts, notes or bills receivable, cash, obligations or securities other than such as are actually pledged hereunder and delivered to the trustee, or by the terms hereof are required to be so pledged and delivered, shall, prior to the occurrence of any of the defaults hereinafter specified in section 1 of article VI and the continuance thereof for the time therein specified, be deemed included in this mortgage."

The article III referred to declares that:

"Until some default shall have been made in the due and punctual payment of the interest or of the principal of the bonds hereby secured, * * * the (Carthage Company) its successors and assigns shall be suffered and permitted to retain actual possession of the mortgaged property (except any shares of stock, trust receipts or voting trust certificates representing shares of stock and bonds pledged hereunder) to cut, quarry, mine and remove timber, stone, coal or other raw materials from the same in the course of its business, and to manage, operate and use the same and every part thereof, and to collect, receive and take the tolls, earnings, rents, issues, profits, dividends (except stock dividends) interest and other income from all of the mortgages and pledged property; to use, dispose of and consume the raw materials in storage, in process of manufacture belonging or owing to the corporation, supplies and stock in trade."

The defaults referred to in section 1 of article VI are those usual in corporate mortgages, and the particular default there mentioned and constituting ground of foreclosure was default "in the payment of any interest on any bond or bonds secured by this indenture" and the continuance of such default "for a period of sixty days."

The bill of foreclosure was dated March 6, 1924. The decree of foreclosure and sale passed on March 27, 1925. By that decree the extent of the lien of the mortgage was declared as follows:

(1) It was declared valid as to the realty, and the unsecured creditors have appealed, alleging said mortgage to be "in its entirety fraudulent, illegal, and void."

(2) At date of decree there were due and unpaid certain state, county, town, school, and village taxes for the years 1923 and 1924. Those for the year 1923 had been assessed prior to the time when the court below, through its receiver, took charge of Carthage Company's property. Taxes for 1924 were levied and assessed after the appointment of a receiver. The court below directed that all these taxes should be paid

out of the proceeds of sale—i. e., in effect by the United States Mortgage & Trust Company—and from this ruling the trust company appealed.

(3) The mortgage was held not to cover a certain claim by Carthage Company against Northern New York Coal Company for damages growing out of breach of contract to deliver coal, committed by said coal company. This claim was, and so far as appears still is, in suit in the Supreme Court of the state of New York. From so much of the decree as excluded this demand from the operation of the mortgage, the trust company appealed.

(4) When the original bill was filed and receiver appointed, the title to certain lands in the province of Quebec, Canada, was in the president of Carthage Company, who, however, had executed a declaration of trust showing that he held the land for the benefit of Carthage Company. No specific reference to this land is made in the mortgage under foreclosure. The court below excluded the Canadian land from the lien of the mortgage, and from this ruling the trust company appealed.

(5) When the mortgage under foreclosure was executed and recorded, Carthage Company held as pledgee certain bonds of a Canadian corporation known as the Quebec Saguenay Pulp Company, Limited. In pursuance of its rights as pledgee, Carthage Company sold these bonds and bought them in at the sale. When the bill of foreclosure was filed, Carthage Company was the absolute owner of these bonds, which the court below excluded from the operation of the mortgage, and the trust company appealed.

(6) On or about December 31, 1919, Carthage Company made a contract with the Union Iron Works for the purchase of four steam boilers. These boilers were physically delivered to the Carthage Company at divers times between July 28 and November 11, 1920; i. e., a considerable time before the execution, delivery, and recording of the mortgage in suit. The contract between Union Iron Works and Carthage Company was specifically for a conditional sale, title was to remain in the Iron Works until the boilers were paid for; but that contract was never recorded nor filed in any public office. The court below held that the boilers passed with the realty, and were covered by the mortgage. From this ruling, Union Iron Works appealed.

These several appeals were argued together.

George E. O'Connor and Thomas O'Connor, both of Waterford, N. Y., for unsecured creditors and Union Iron Works.

Patterson, Eagle, Greenough & Day, of New York City (J. Frederick Eagle and Carroll G. Walter, both of New York City, of counsel), for United States Mortgage, etc., Co.

Francis E. Cullen, of Watertown, N. Y., for C. E. Norris, receiver.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). The matters at bar are not very closely related logically, so we shall take them up in separate statements of opinion.

[1] 1. As to the alleged invalidity in toto of the defendants' mortgage, we think the decision below correct. There is no contention that its form is unusual or that filing was not attended to. Argument is (a) the above-quoted provisions of the mortgage, allowing Carthage Company to sell part of its property without accounting therefor to the mortgagee, are fraudulent and vitiatory of the entire mortgage; and (b) the mortgage operated upon a "stock of merchandise in bulk" or upon "merchandise and fixtures pertaining to the conduct of the business of the mortgagor," but no inventory of the mortgaged goods was given by mortgagor, and no notice was given creditors by the mortgagee, as required by section 230-a of New York Lien Law (Consol. Laws, c. 33, as added by Laws 1921, c. 462, amended by Laws 1922, c. 137).

The first contention is supported by citing cases such as In re Leslie-Judge Co. (C. C. A.) 272 F. 886, certiorari denied, 256 U. S. 704, 41 S. Ct. 625, 65 L. Ed. 1180, Russell v. Winne, 37 N. Y. 597, 97 Am. Dec. 755, and Skilton v. Coddington, 185 N. Y. 80, 77 N. E. 790, 113 Am. St. Rep. 885, which say that a reservation of right in a mortgagor to sell all or a large part of the material sought to be hypothecated under a chattel mortgage, and retain the proceeds thereof, renders the mortgage "fraudulent as matter of law and void in toto."

Whether the phrase "fraudulent as matter of law" is ever anything more than a rather violent way of stating a conclusion of fact may well be doubted, but the use made of the decisions using the phrase is neither persuasive nor reasonable. The cases cited hold that, when the obnoxious provisions are found in a chattel mortgage, the

whole chattel mortgage is invalidated, and they cannot be cited beyond that point. The reason for the holding is obvious, the mortgaging (i. e., hypothecation without change of possession of chattels) is strongly repugnant to common-law principles; nothing but a statute validates such mortgages, and, when the mortgagee not only has no possession but bargains away his certain right ever to get it, there is no mortgage in the way of creditors in accordance with any sound legal theory, customary, historical, or statutory. Hence denunciation of such so-called mortgages of personalty.

But when the mortgage is corporate and therefore valid against creditors, under New York law, when affecting both realty and chattels, and filed only as a real estate mortgage, the style of case cited has no application. Such instruments as this at bar contain in truth two mortgages, two schemes of hypothecation, resting on very different schemes of law, and having totally different legal genealogies.

There is no logical reason why a document, bad as a chattel mortgage, for violation of the theory of possession, should be also bad as a mortgage of realty, where the theory of physical possession before default never had any place.

In discussing this point we have assumed that this mortgage wholly fails as a chattel mortgage; but the point is only assumed arguendo; yet with that assumption we think the opinion in Chemung, etc., Bank v. Payne, 164 N. Y. 252, 58 N. E. 101, controlling in favor of validity of this mortgage as to realty. That case was not of a corporate mortgage; there was a total failure to file as a chattel mortgage, and the argument was pressed that, because the instrument was half bad, it must be wholly bad; but ground for decision was that no such rule as was contended for existed; the real inquiry was whether there was that actual fraud that vitiates any transaction and all of it, and, as there was no such fraud, the mortgage was good as to realty. There as here a finding was made by the trial court of freedom from all actual fraud, and the same result follows—the decree on this point is affirmed (c. f. Hardin v. Dolge, 46 App. Div. 416, 61 N. Y. S. 753).

[2] 2. The taxes upon mortgaged property. The only person who had any property out of which to pay was the receiver. Therefore the underlying question is this: When the trust company has paid these taxes, what is the nature of its claim for reimbursement against the property in the receiver's hands?

We think it clear that, so far as the taxes levied before the appointment of the receiver are concerned, the trust company is merely a general creditor; the claim arising out of breach of covenant by Carthage Company. But, so far as taxes levied while the mortgaged property was in possession of the receiver are concerned, there can be no default by Carthage Company, which was inhibited from paying; and the amount paid by the trust company cannot give rise to a claim for breach of contract against Carthage Company. Consequently we consider taxes levied against the property while in the hands of the receiver as expenses of the receivership. Therefore the receiver should reimburse the trust company for the taxes of 1924 out of whatever funds he may ultimately have to pay receivership charges. Union Trust Co. v. Great Eastern Co., 248 F. 46, 160 C. C. A. 186; Atkinson v. Aldrich, etc., Co. (D. C.) 248 F. 134.

[3] 3. The claim in suit and against Northern New York Coal Company. As found below, this demand for damages for breach of contract arose in 1918, and was in existence when the mortgage was executed. Such a demand was and is a chose in action; it was plainly assigned by the first portion of the above-quoted habendum clause, and not excluded by the proviso, for such a demand is not included in "accounts, notes or bills receivable, cash, obligations or securities." Chose in action is the only applicable term employed in the mortgage and covering this item, and such a chose is not a chattel. Had the assignment been unrecorded, it would have been good against creditors. Greey v. Dockendorf, 231 U. S. 513, 34 S. Ct. 166, 58 L. Ed. 339; In re Michigan Furniture Co. (D. C.) 249 F. 978. It was therefore error to refuse trust company's demand to sell this chose in action in foreclosure.

[4] 4. The Canadian Lands. As pointed out above, the Carthage Company never had title to this realty; that was held by a natural person who had made a private unrecorded declaration of trust in favor of the company. Argument is that the future property clause of the mortgage covers; it is as follows:

"It being intended that all property, real, personal and mixed, of any and every kind and character, which the corporation now owns, and all property which it may hereafter acquire, and howsoever acquired, shall be subject to the lien of this indenture, with like tenor and effect as though now owned by the corporation and as though covered

and conveyed hereby by specific and apt descriptions."

Especially is it urged that the clause covers because this Canadian land is after-acquired realty. Undoubtedly the land was an "immovable," the nearest equivalent of "realty" to be found in Quebec legal language; but we do not find it necessary to inquire whether there is any difference between realty and personalty in the application of the after-acquired property clause in this mortgage. These interests in foreign realty were never real estate owned by Carthage Company; another person owned them, as trustee to be sure, but an interest as cestui que trust in land can never be called realty in the cestui.

Again, underneath and controlling all construction of this mortgage, is an ascertainment of the intent of parties, derived from a study of what they wrote, in this instance the language of the mortgage.

We hold (1) that what the mortgagor ever owned in this Canadian land was never land or realty in mortgagor; therefore being after acquired, the mortgage did not apply, under New York law (Zartman v. First National Bank, 189 N. Y. 267, 82 N. E. 127, 12 L. R. A. [N. S.] 1083; Titusville v. City of New York, 207 N. Y. 203, 100 N. E. 806; In re Marine, etc., Co., 144 F. 699, 75 C. C. A. 451); and (2) that there is no evidence of any intent on the part of either mortgagor or mortgagee to subject land in Quebec directly or indirectly to the lien of this New York mortgage. In this regard the decree below was correct. .

5. The bonds of the Quebec-Saguenay Company. When the mortgage was executed, the mortgagor had possession of these bonds as pledges to secure a debt due it by the Quebec Company. This debt was certainly either an account, or a bill receivable, and therefore excluded from the mortgage by the above-quoted proviso of the habendum, and, if the bonds stand in the place of the account or bill, they are excluded still. But if the bonds take position according to their own nature, then they are both after acquired, and were never deposited with the trustee, as bonds were required to be by article III of mortgage, supra. As to this item the decree below was correct.

[5] 6. The boilers bought from Union Iron Works. These chattels were all delivered at Carthage Company's works before the execution of the mortgage. The relation of parties is wholly governed by the Personal Property Law of New York as it stood in 1921 (Consol. Laws, N. Y. c. 41)

when the mortgage was executed. At that time the said statute (section 62) provided that, if the conditional sale was of chattels to be attached to a building, it would be void against "subsequent bona fide purchasers or incumbrances of the premises on which said building stands," and as to them the sale should be absolute, unless before "the date of the delivery" of the chattels at the building the sales contract was filed and indexed. Under such a statute the condition in the sale was void as against a mortgagee whose freedom from all fraud has been specifically found below. The decision below in this regard was correct.

Let the decree below be modified as above indicated; the trust company will recover against the appellant creditors one bill of costs; no other costs in this court.