## CENTRAL VERMONT RY. CO. et al. v. MARSCH et al.

### No. 2653.

Circuit Court of Appeals, First Circuit. · May 31, 1932.

Walter A. Dane, of Boston, Mass., for appellants Central Vermont Ry. Co. and Centmont Corporation.

J. G. Palfrey, Pierpont L. Stackpole, and Warner, Stackpole, Bradlee & Cabot, all of Boston, Mass., for appellants receivers.

Ralph E. Tibbetts, of Boston, Mass., for appellee John Marsch.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

BINGHAM, Circuit Judge.

This is an appeal by the Central Vermont Railway Company, the Centmont Corporation, and Roy D. Garner and Clayton K. Fauver, receivers of the Southern New England Railroad Corporation, from a decree of the District Court of Massachusetts of July 1, 1931.

It appears that on March 30, 1926, the Central Vermont Railway Company, a Vermont corporation, filed in the District Court of Massachusetts a creditors' bill in behalf of itself and all other creditors asking the appointment of receivers of the defendant, the Southern New England Railroad Corporation, a Massachusetts corporation; that the defendant filed an answer admitting each and every allegation of the bill; and that, on that day, a consent decree was entered appointing Roy D. Garner and Clayton K. Fauver receivers.

The Southern New England Railroad Corporation was organized for the purpose of locating, building, and operating a railroad from a point in the town of Palmer, Mass., to a point in the town of Blackstone on the boundary line between the states of Massachusetts and Rhode Island, a distance of 57 miles. At the time the bill was filed land had been acquired by eminent domain and otherwise for the construction of the road, the greater part of the right of way had been graded, and culverts, bridges, and crossings over and underneath highways built. But the company was without funds for the completion of the project, and the time for the completion of the road was to expire in December, 1926, but appears to have been afterwards extended and to be still in existence.

In the bill it was alleged that "the sole readily realizable assets" of the Southern New England Corporation consisted "of land acquired for right of way, terminals and other necessary purposes in connection with the operation of a railroad," and that it was the belief that an effort would be made from some quarter to complete the railroad, and the property should be preserved as a whole, and that could only be done through the appointment of receivers; that the defendant was heavily indebted to various creditors, some of said indebtedness being now due and some about to become due, and was also shortly to be indebted for taxes, and that these, as well as other obligations, required a receivership in order to preserve the property; and prayed that receivers should be appointed; that they should take possession of all property of the road, "including all the ways, terminal facilities, machinery and supplies," etc., with full power to hold, manage, and operate the same, and receive all rents, profits, claims, etc., or to liquidate and wind up the concern. The prayer of the bill was granted, and the receivers were invested with the powers requested in the bill.

It further appears that the receivers have from time to time made reports to the court in which they set forth that they have had possession of all the property of the railroad; that they have rented portions of the real estate, collected the rents, and used the receipts to meet the expenses of the administration of

the estate; that they collected in rents a total of $30,466.30; that, except for the revenue received from the properties and proceeds of loans negotiated under the authority of the court, the receivers had no other funds for the administration of the estate until February 25, 1930, when a dividend of $242,361.34 was received from the Southern New England Railway Company receivership in the state of Rhode Island on a claim proved by the receivers of the Massachusetts corporation.

In 1918, before the receivership bill was filed, John Marsch brought suit against the Southern New England Railroad Corporation and attached all of its real estate, including the right of way. The suit was in process of litigation when the receivers were appointed. He obtained judgment in his favor in the District Court in June, 1930, for $426,235.41 damages, $304,545.20 interest, and $177.06 costs, which judgment was affirmed by this court in 1931. 45 F.(2d) 766.

After the appointment of receivers on March 30, 1926, taxes accrued and were assessed against the Southern New England Railroad Corporation on its real estate outside its right of way in the various towns and cities in which the land was situated, and also in 1927, 1928, 1929, and 1930. None of the taxes which accrued during the receivership, and while the receivers were in control of the property taxed, were paid by the receivers except for the year 1926. In 1927, the taxes for 1926 being overdue and unpaid, the receivers applied to the court on September 28, 1927, for leave to borrow $4,000 for the purpose of paying them, and were authorized to borrow that sum from the Welden National Bank of St. Albans, Vt., on their promissory note, and, acting under that authority, they borrowed the money and paid the taxes for that year. For two or three years after 1926 the cities and towns sold for taxes the land taxed (which did not include the five-rod strip comprising the right of way, that being exempt from taxation under the Massachusetts statutes), but without first obtaining permission of the court so to do. It is estimated that the taxes on the property for the years for which it was thus sold, with interest and costs, amount to $15,000. The taxes due on the property for the other years in which it was not sold for taxes, with interest, amount to approximately $15,000.

July 1, 1931, John Marsch, who had attachments on all the real estate of the Southern New England Railroad Corporation, applied to the District Court for an order requiring the receivers to pay out of the funds in their hands, before distribution to the creditors, the note and interest thereon given by them to the Welden National Bank for $4,000; to pay all accrued and unpaid taxes with interest thereon against the real estate of the Southern New England Railroad Corporation, and to redeem such portion or portions of said real estate as had been sold for taxes since the date of the appointment of receivers. And on that day the court entered an order granting the motion. This is the order appealed from.

In the assignments of error of the Central Vermont Railway Company and the Centmont Corporation they complain: (1) That the decree was in violation of their rights; (2) that it was inequitable as to them; (3) that it was contrary to the Constitution and laws of the United States; (4) that, in so far as the decree was made in the discretion of the court, it was an inequitable exercise of discretion. And the receivers, in their assignments of error, complain: (1) That the decree violates the rights of the general creditors of the Southern New England Railroad Corporation; (2) that it is inequitable as to them; (3) was contrary to the Constitution and laws of the United States; and (4) in so far as made in the discretion of the court was an inequitable exercise of discretion.

Before entering upon a discussion of the main questions in the case, it may be well to state that all the parties to the controversy agree that, since the decree of July 1, 1931, the District Court has entered an order declaring illegal and void all the sales of the real estate for taxes made since the date of the appointment of receivers, and has reaffirmed the order of July 1, 1931, except as to two matters, that where tax sales have taken place the purchasers at such sales shall be subrogated to the rights of the town and the receivers shall pay such purchasers the amounts of all taxes paid by them with interest thereon; and, where the towns have taken over any of said property for taxes, the receivers shall pay said towns the amounts of all taxes for which the property was taken, together with interest, rather than redeem such portions as directed in the order of July 1, 1931, but staying execution of the modification order pending the appeal from the order of July 1, 1931.

The note of $4,000 was given to the bank to raise funds to pay the taxes of 1926 and, the tax sales having been set aside, the real question on this appeal is whether the receivers are liable for the unpaid taxes that accrued during the receivership on the real estate of which they took charge.

The District Court, in making the order or decree of July 1, 1931, directing the receivers to pay the taxes out of the general fund then in their hands, regarded such action to be authorized by chapter 206, § 31, of the General Laws of Massachusetts, which provides that taxes assessed by the commonwealth or a county, city, or town therein, shall be entitled to priority in the settlement of estates by receivers. This statute is without application to the present situation, for apparently it has been held by the Massachusetts courts that it has to do with taxes that have accrued prior to and are in existence at the time the receivership is granted. Jones v. Arena Publishing Co., 171 Mass. 22, 26, 50 N. E. 15; Waite v. Worcester Brewing Co., 176 Mass. 283, 57 N. E. 460. It is therefore unnecessary to consider whether, in any view, it could be regarded as applicable to receiverships in federal courts. See First National Bank of Houston v. Ewing (C. C. A.) 103 F. 168; Guffey v. Smith, 237 U. S. 101, 35 S. Ct. 526, 59 L. Ed. 856; Pusey & Jones Co. v. Hanssen, 261 U. S. 491, 43 S. Ct. 454, 67 L. Ed. 763.

The question whether receivers are liable for taxes that have accrued on property in their custody and possession subsequent to the date of the receivership has been directly before the Court of Appeals for the Second Circuit in Hammond v. Carthage Sulphite Pulp & Paper Co. (C. C. A. 1925) 8 F.(2d) 35, 38, and in MacGregor v. Johnson-Cowdin-Emmerich, Inc. (C. C. A. 1930) 39 F.(2d) 574, 576.

In the Hammond Case a part of the assets of the receivership estate consisted of real estate subject to a mortgage. The mortgagee, after the appointment of receivers, having obtained permission so to do, foreclosed his mortgage and sold the real estate. The decree authorizing the sale provided that the taxes were to be paid out of the proceeds of the sale. There were two classes or sets of taxes, those that had accrued on the property prior to the receivership and those that had accrued after the receivership. The mortgagee sought to recover from the receivers both classes of taxes. The court held that as to those that were assessed prior to the receivership the mortgagee was a general creditor only, but as to those that were assessed after the receivership he had a prior claim as such taxes constituted one of the expenses of the receivership. In speaking of this matter, Judge Hough, writing the opinion of the court, said:

"We think it clear that, so far as the taxes levied before the appointment of the receiver are concerned, the trust company [the mortgagee] is merely a general creditor; the claim arising out of breach of covenant by Carthage Company. But, so far as taxes levied while the mortgaged property was in possession of the receiver are concerned, there can be no default by Carthage Company, which was inhibited from paying; and the amount paid by the trust company cannot give rise to a claim for breach of contract against Carthage Company. Consequently we consider taxes levied against the property while in the hands of the receiver as expenses of the receivership. Therefore the receiver should reimburse the trust company for the taxes of 1924 out of whatever funds he may ultimately have to pay receivership charges."

In the MacGregor Case the receivers took over and administered as a part of the receivership estate certain real estate, a part of which was a mill, the mill being subject to a mortgage. There was no equity in the property over and above the mortgage, and the mortgagee claimed that the receivers should pay the taxes that accrued on the property before and subsequent to their appointment. As to the taxes that accrued after the receivers' appointment, Judge Learned Hand, speaking for the court, on page 576 of 39 F. (2d), said:

"The taxes accruing after the receivers entered are in a different position. They could have refused to accept the mill, if they had thought the equity a burdensome asset. Having elected to enter, they took it cum onere, and the taxes, which were a condition upon their continued occupation, were as much a part of their expenses as heat, custody or current upkeep. So far as we have found, courts have universally regarded them as part of the receivers' expenses, when the question has come up. Union Trust Co. v. Great Eastern Lumber Co., 248 F. 46, 48, 49 (C. C. A. 5); Bear River, etc., Co. v. Petoskey, 241 F. 53, 57 (C. C. A. 6); Hammond v. Carthage, etc., Co., 8 F.(2d) 35, 38 (C. C. A. 2); Wiswall v. Kunz, 173 Ill. 110, 50 N. E. 184; Gehr v. Iron Co., 174 Pa. 430, 34 A. 638; Kelley v. Collins & G. R. Co., 154 Ga. 698, 115 S. E. 67 (semble); Atkinson & Co. v. Aldrich Clisbee Co. (D. C.) 248 F. 134."

And continuing the court said:

"It is true that in that case [Robertson v. Goree (C. C. A.) 29 F.(2d) 261] the occupation had resulted profitably, but that is not material. The receivers having once chosen to accept the property, the taxes were an expense of operation, regardless of the outcome. It would be a curious doctrine which

allowed the general creditors to avoid them because their venture turned out badly; their representatives must consider that at the outset. Every consideration of equity requires them to bear all charges incidental to the occupation which they have enjoyed."

Counsel for the appellants seek to distinguish these cases on the ground that in New York state there is a lien for real estate taxes and therefore they are not applicable to the situation here. But in Massachusetts, where these taxes arose, taxes assessed upon land are a lien thereon. 1 General Laws of Massachusetts, c. 60, § 37.

They also contend that it is inequitable to require the receivers to pay the taxes out of the general fund of the receivership estate, but this contention is fully answered in the MacGregor Case, where Judge Hand points out that the receivers are the representatives of the general creditors who instituted the receivership proceeding; that it was open to them to refuse to accept the mill on which the mortgage in that case was, if they thought the equity a burdensome asset, but having elected to enter they took it cum onere, and the taxes, which were a condition upon their continued occupation, were as much a part of their expenses as heat, custody, or current upkeep; and they were an expense of operation, regardless of the outcome; that it would be a curious doctrine which would allow the general creditors to avoid them because their venture turned out badly.

The same reasoning applies here, for the general creditors by their bill, knowing of the Marsch attachment, specifically asked for and obtained the appointment of receivers and had them directed to take possession of the lands on which the attachment existed and the taxes afterwards accrued, with the view no doubt that they should contest the Marsch suit, which they did. Having done so, the general creditors cannot now complain if they have to bear the burden of the taxes which their representatives incurred or assumed in so doing. The bill also asked that the prosecution of pending suits be stayed, which included the Marsch suit, as to which the decree, of March 30, 1926, staying pending suits was, on April 5, 1926, modified so as to allow the Marsch suit to proceed, the receivers being made defendants therein. The plaintiff in the receivership bill and the receivers, therefore, knew of the Marsch attachment at the outset.

It was not inequitable for the receivers to be required to pay their own bills, and it did not deprive the general creditors of their property without due process of law.

For other cases reaching a like conclusion, see Coy v. Title Guarantee & Trust Co. (C. C. A.) 220 F. 90, L. R. A. 1915E, 211; Union Trust Co. v. Illinois Midland R. Co., 117 U. S. 434, 6 S. Ct. 809, 29 L. Ed. 963; In re Tyler, 149 U. S. 164, 13 S. Ct. 785, 37 L. Ed. 689; First National Bank v. Ewing (C. C. A.) 103 F. 168; Union Trust Co. v. Great Eastern Lumber Co. (C. C. A.) 248 F. 46; Atkinson & Co. v. Aldrich-Clisbee Co. (D. C.) 248 F. 134; Bear River Paper & Bag Co. v. Petoskey (C. C. A.) 241 F. 53; People of State of Michigan v. Michigan Trust Co., 52 S. Ct. 512, 76 L. Ed. ——, May 16, 1932.

The order or decree of the District Court is affirmed, with costs in this court to the appellee John Marsch.