**HENNEPIN COUNTY, MINN., et al. v. M. W. SAVAGE FACTORIES, Inc., et al. (two cases).**

**Nos. 10523, 10550.**

Circuit Court of Appeals, Eighth Circuit.

April 23, 1936.

Rehearing Denied May 21, 1936.

Armin M. Johnson, of Minneapolis, Minn. (Claude G. Krause, Glenn S. Stiles, and Cobb, Hoke, Benson, Krause & Faegre, all of Minneapolis, Minn., on the brief), for appellants.

Adrian H. David, of Minneapolis, Minn. (Mortimer H. 'Boutelle and M. H. Strothman, Jr., both of Minneapolis, Minn., on the brief), for appellees.

Before SANBORN, VAN VALKENBURGH, and FARIS, Circuit Judges.

SANBORN, Circuit Judge.

The appellants applied to the court below for an order requiring the trustees of the debtor corporation to pay certain taxes upon real estate. From the denial of their application, they have appealed.

The matter was submitted to the court below upon stipulated facts. The debtor was a mail order house doing business in Minneapolis, Minn. It owned its plant and the land upon which it was situated. On February 1, 1930, it mortgaged this real estate to the Minnesota Loan & Trust Company (now Northwestern National Bank & Trust Company) to secure $650,000 of bonds, which bonds were pledged with the Trust Company as security for an equal amount of notes, $594,000 of which were issued and sold. February 18, 1932, upon a creditors' bill and an answer admitting its allegations and consenting to a decree, receivers were appointed for the debtor. The bill alleged inter alia that the debtor's real estate was peculiarly adapted to its business; that no default had as yet occurred under the mortgage; and that the plaintiffs were informed and believed that the debtor had a material equity in the real estate. In its order appointing receivers, the court authorized them to take possession of the debtor's property and to continue its business on the premises then occupied by it, and granted the usual injunction against interference with the possession of the receivers. Pursuant to that order, the receivers occupied the real estate continuously from February 18, 1932, until June 13, 1934, during which period they continued the business of the debtor. They paid taxes assessed against this real estate for the years 1931 and 1932, which fell due in 1932 and 1933. They paid nothing to any one for the use of the real estate and paid no interest to the mortgagee or to the noteholders.

On June 13, 1934, the equity receivership, on the debtor's petition, was converted into a proceeding under section 77B of the Bankruptcy Act (11 U.S.C. § 207, 11 U.S.C.A. § 207), and the receivers were appointed trustees and were directed to continue the business of the debtor until the further order of the court. In its petition the debtor disclosed that the receivers, in their accounts, were carrying as a liability an item of "Accrued taxes—$17,563.89," which included accrued taxes against the real estate for the year 1933 and estimated accrued taxes for the year 1934 up to May 31, 1934. The order appointing the former receivers as trustees provided that the estate of the debtor be taken over by them subject to the administration expenses of the receivership, and be vested in them subject to a paramount lien for all obligations of the receivers, including all obligations lawfully incurred in the administration of the receivership estate and all reasonable administrative expenses and allowances as determined by the court having jurisdiction of the receivership. The business was continued by the trustees until April 1, 1935, and they held possession of the real estate until September 30, 1935.

The final account of the receivers, filed July 26, 1934, which was approved and allowed by the court on September 27, 1934, carried as a liability, "Accrued Taxes—$18,238.29," which included accrued real

estate taxes for 1933 and estimated accrued real estate taxes up to June 13, 1934.

On May 18, 1935, the appellants (Hennepin County, the taxing authority, the Northwestern National Bank & Trust Company, of Minneapolis, the mortgagee, and a noteholders' protective committee) filed their application for an order requiring the trustees to pay all unpaid taxes upon the real estate which had accrued while it was in their possession and in the possession of the receivers. The trustees at the same time filed a petition alleging that the estate of the debtor had no equity in the property. They resisted the application of the appellants. On September 30, 1935, the court determined that the real estate was worth $50,000, and authorized the trustees to surrender it to the mortgagee or, if it refused a deed, to abandon it. The application of the appellants for the payment of taxes by the trustees was denied.

The estate of the debtor was liquidated for approximately $135,000. Total claims, exclusive of those of the secured noteholders, were, in round figures, $1,200,000. No dividends have been paid to creditors. The real estate taxes for 1933 were $9,629.83, and for 1934, $11,010.99, exclusive of interest and penalties, and are now a lien upon the real estate superior to the lien of the mortgage.

At no time while the debtor's real estate was in the possession of the receivers or trustees did the mortgagee apply for permission to foreclose, although default in the conditions of the mortgage had occurred about the time receivers were appointed, and the mortgagee, by the terms of the mortgage, had the right to declare the entire debt secured by the mortgage due and payable, to foreclose, and to have a receiver appointed to collect rents and profits.

The situation is, of course, apparent. During the years that an attempt was being made to resuscitate this business, there was no demand for real estate and it had no market value. If the business could be revived, it was for the best interest of creditors, secured and unsecured, that that be done. The mortgagee could probably have done nothing with the property if it had foreclosed. If the receivers and the trustees were obligated to pay current taxes, the mortgagee was justified in permitting them to use the property, knowing that at least those carrying charges would be paid, and that if all efforts to rehabilitate the debtor should fail, the noteholders would be no worse off at that time than they were at the time of receivership.

It seems to be well settled that when receivers take over mortgaged real estate and use it for the actual or potential benefit of their trust estate, they are ordinarily obliged to pay current taxes as they accrue, whether the taxes are mere charges against and liens upon the property, as in Minnesota, or are the personal obligations of the owners. This is not because such taxes are debts of the insolvent or the trust estate or because the receivers have assumed the obligations of the mortgagor to pay taxes upon the mortgaged premises, but because the receivers are operating the property, and current taxes are to be regarded as ordinary expenses of operation. To escape the obligation to pay such taxes, a receiver must, within a reasonable time, repudiate the property as a burden upon the estate. He cannot accept the benefits and escape the burdens of operation.

A case directly in point is MacGregor v. Johnson-Cowdin-Emmerich, Inc., (C.C. A.2) 39 F.(2d) 574, page 576, where the court, speaking through Judge Learned Hand, said: "The taxes accruing after the receivers entered are in a different position. They could have refused to accept the mill, if they had thought the equity a burdensome asset. Having elected to enter, they took it cum onere, and the taxes, which were a condition upon their continued occupation, were as much a part of their expenses as heat, custody or current upkeep. So far as we have found, courts have universally regarded them as part of the receivers' expenses, when the question has come up. Union Trust Co. v. Great Eastern Lumber Co., 248 F. 46, 48, 49 (C. C.A.5); Bear River, etc., Co. v. Petoskey, 241 F. 53, 57 (C.C.A.6); Hammond v. Carthage, etc., Co., 8 F.(2d) 35, 38 (C.C. A.2); Wiswall v. Kunz, 173 Ill. 110, 50 N. E. 184; Gehr v. Iron Co., 174 Pa. 430, 34 A. 638; Kelley v. Collins & G. R. Co., 154 Ga. 698, 115 S.E. 67 (semble); Atkinson & Co. v. Aldrich-Clisbee Co. (D.C.) 248 F. 134. The cases are not so uniform as regards franchise taxes, but we may disregard them here. The amendment of section 64a of the Bankruptcy Act (11 U.S. C.A. § 104)—assuming that that law is relevant to the case at bar—does not touch the payment of taxes accruing during the

trustee's possession. Robertson v. Goree, 29 F.(2d) 261 (C.C.A.5). It is true that in that case the occupation had resulted profitably, but that is not material. The receivers having once chosen to accept the property, the taxes were an expense of operation, regardless of the outcome. It would be a curious doctrine which allowed the general creditors to avoid them because their venture turned out badly; their representatives must consider that at the outset. Every consideration of equity requires them to bear all charges incidental to the occupation which they have enjoyed."

In Central Vermont Ry. Co. et al. v. Marsch et al. (C.C.A.1) 59 F.(2d) 59, page 62, the First Circuit held receivers liable for taxes on real estate accruing during receivership, saying: "It was not inequitable for the receivers to be required to pay their own bills, and it did not deprive the general creditors of their property without due process of law." See, also, Clark on Receivers, § 670 (b) (1); Prudential Ins. Co. v. Liberdar Holding Corporation (C.C.A.2) 74 F.(2d) 50; McKenzie v. Standard Bleachery Co., 109 N.J.Eq. 429, 157 A. 845, 847; Coy v. Title Guarantee & Trust Co. et al. (C.C.A.9) 220 F. 90, 92, L.R.A.1915E, 211; Hammond et al. v. Carthage Sulphite Pulp & Paper Co. (C.C.A.2) 8 F.(2d) 35. Cf. Michigan v. Michigan Trust Co., 286 U.S. 334, 344, 52 S.Ct. 512, 76 L.Ed. 1136.

The appellees contend that this court has adopted a different rule in Mortgage Loan Co. et al. v. Livingston, 78 F.(2d) 517. We think not. There a receiver in bankruptcy, who had operated a property for six months and then rejected it and who had accounted to a mortgagee for all rents and profits which were received during the period of operation, was not required to reimburse the mortgagee for accrued taxes which it had paid to protect its security. This court pointed out in that case that the receiver and the lower court had a reasonable time in which to determine whether to reject the property as burdensome, and that the mortgagee had received the benefits accruing from the use of the property by the receiver and was the purchaser of the mortgaged premises at foreclosure sale subject to the tax lien. That case is no authority for the proposition that receivers may retain and use mortgaged real estate indefinitely and escape the payment of current taxes.

The obligations of the receivers here were visited upon the trustees by the order of the court below pursuant to the express authority of section 77B (11 U.S.C. § 207, 11 U.S.C.A. § 207), so there can be no doubt as to the liability of the trustees for the payment of real estate taxes accruing during the receivership.

The question then arises as to the taxes accruing during the trusteeship. The court below based its denial of the appellants' application upon section 64a of the Bankruptcy Act, as amended (11 U.S.C. § 104 (a), 11 U.S.C.A. § 104 (a), which provides: "(a) The court shall order the trustee to pay all taxes legally due and owing by the bankrupt to the United States, State, county, district, or municipality, in the order of priority as set forth in paragraph (b) hereof: Provided, That no order shall be made for the payment of a tax assessed against real estate of a bankrupt in excess of the value of the interest of the bankrupt estate therein as determined by the court. Upon filing the receipts of the proper public officers for such payments the trustee shall be credited with the amounts thereof, and in case any question arises as to the amount or legality of any such tax the same shall be heard and determined by the court."

Assuming that this section is relevant, we find that at least two courts have held that it is inapplicable to current taxes upon property which has been taken over and operated by the court for the benefit of the estate. Robertson v. Goree (C.C.A.5) 29 F.(2d) 261; MacGregor v. Johnson-Cowdin-Emmerich, Inc., supra (C.C.A.2), 39 F.(2d) 574. That seems to be a reasonable and sensible interpretation, since such taxes are not in a true sense taxes "due and owing by the bankrupt," but are ordinary carrying charges of property taken over and used by the trustees under order of the court in the conduct of their own operations and for the benefit of general creditors.

It is the duty of the courts to lean towards uniformity of decision and practice, and we would not be justified in refusing to follow the decisions referred to unless we were satisfied that they were erroneous. Bright et al. v. State of Arkansas (C.C.A. 8) 249 F. 950, 952.

The appellees say that the court below has not determined the validity of these taxes. That would be no ground for re-

fusing to require the trustees to pay the taxes which had accrued in so far as they were valid. The mortgagee, who is the real party in interest, does not ask that any specific amount be paid. It wants the lien for the taxes discharged. If the trustees can still secure a reduction in the amount of the taxes assessed, they should be permitted to do so, but the court below should see to it that these taxes, in so far as they are valid liens upon the real estate, are paid by the trustees.

There are two appeals from the same order, one allowed by this court, and one allowed by the District Court. Since the order related to the administration of the estate in bankruptcy, the appeal allowed by the District Court in No. 10550 is dismissed.

In No. 10523, the order appealed from is reversed, and the case remanded for further proceedings not inconsistent herewith.