### DULBERG v. ZANKEL et al.
### No. 50.

Circuit Court of Appeals, Second Circuit. Nov. 13, 1933.

Lewis & Schaap, of New York City (L. S. Lewis, of New York City, of counsel), for appellant.

Blau, Perlman & Polakoff and Nathaniel L. Goldstein, all of New York City (Nathan D. Perlman and Samuel Mezansky, both of New York City, of counsel), for appellee receiver.

Albert Schatz, of New York City (Murray Waldman and Samuel Katz, both of New York City, of counsel), for appellees creditors.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

This creditor's suit for a conservation receivership was brought against three individuals and eight corporations. The bill alleged that all the defendants were united in interest and that the corporations were owned and controlled by the individual defendants. Two of the corporations operated restaurants, and the others owned interests in distinct parcels of real estate. A receiver was appointed for the defendants, and he ap-

parently brought their assets into hotchpot and treated the creditors of the several defendants as though they had a common debtor, as will appear more specifically hereafter. Whether it was proper to appoint a receiver on such a bill, and whether he could properly intermingle the assets and creditors of the several defendants as he did, are questions not directly before us. We allude to them lest by silence we might be thought to give tacit approval to this extraordinary procedure.

The receiver was appointed in July, 1929, and continued to operate the properties of the defendants for more than three years. By court orders he was authorized to conduct the business of the defendants and to pay "out of any funds in his hands" all real estate and water taxes due and to become due, as well as rent, mortgage interest, and installments of principal on mortgages, which become due on and after July 1, 1929. At the outset it was expected that creditors would be paid in full, but, as real estate values and rentals declined and as profits from the restaurants began to fall off, it became apparent that not even the expenses of the receivership would be met. In November, 1932, all the properties were ordered to be sold for a price which leaves about $36,000 for distribution. There are creditors of the receiver (as distinguished from creditors of the defendants) having claims of some $70,000, and in addition there have accrued, during the receivership, taxes, water charges, and rents which remain unpaid to an aggregate amount of nearly $36,000. The receiver filed his accounts and asked for instructions as to distribution. Thereupon the appellant appeared and made application for an order directing the receiver to pay certain items, aggregating $7,811.77, as prior claims upon the fund in his hands.

The appellant holds a second mortgage for $70,000 upon premises known as 136 Delancey street in the city of New York. They were owned by Nestwood Estates, Inc., one of the defendants named in the bill for receivership, and constituted part of the real estate of which the receiver took possession. The items which the second mortgagee asked to have paid in full in preference to the claims of the receiver's creditors, are the following: City real estate taxes on the mortgaged premises for 1931 and 1932, together with penalties and interest for delay in payment thereof; (2) frontage water charges for 1930, 1931, and 1932, and water meter charges for 1932, together with penalties and interest for

delay in payment thereof; (3) an assessment for street widening entered August 26, 1929, with penalties and interest thereafter; and (4) interest which fell due during 1932 under the first and second mortgages on said premises.

During the receivership receipts from 136 Delancey street were $45,000 less than disbursements on account of these premises. Such disbursements included a payment of $9,000 in reduction of the appellant's second mortgage, large payments on the third and fourth mortgages, and payment of mortgage interest accruing prior to August, 1932, and of taxes and water rents accruing during the first year or two of the receivership. The $45,000 excess of outgo over income for these premises was provided out of the income received from the two restaurants which the receiver was operating. One of these was on adjacent premises and a small portion of the ground floor of 136 Delancey street was used by the receiver as a kitchen in connection therewith. Similar advances from income from the restaurants were made in favor of other parcels of real estate held by the receiver, the total excess of disbursements over receipts on account of all receivership real estate amounting to some $160,000. Had the income of the restaurants not been so used, the receiver says, with apparent accuracy, that his unpaid creditors, all of whose claims originated in the sale on credit of merchandise used by the receiver in the restaurants, would have been paid in full.

When the properties of the receivership were sold, they were disposed of for a lump sum, and it is apparently impossible to allocate a particular portion of the price received to 136 Delancey street. This piece was sold subject to the lien of taxes and water charges as well as mortgage liens, none of which was assumed by the purchaser. The restaurants were the only properties of substantial value, and it may well be doubted whether the purchaser ascribed any value whatever to 136 Delancey street in excess of the liens upon it, for the appellant's affidavit states that the purchaser refuses to pay taxes or interest and has signified its intention to abandon these premises.

Upon the foregoing facts, the court below denied the mortgagee's petition and ruled that the fund should be distributed to the receiver's creditors. The correctness of this ruling is here for review.

In the case at bar, the city has filed no claim asking for payment of its taxes and water charges. It is apparently content to rely upon the lien secured to it by section 1017 of its charter as amended (Laws 1901, c. 466, as amended by Laws 1916, c. 602, § 7; Greater N. Y. Charter, § 151-a, as added by Loc. Laws 1926, No. 16, § 1) which reads as follows:

"§ 1017. All taxes and all assessments for local improvements and all water rents, and the interest and charges thereon, which may, in the city of New York, as by this act constituted, hereafter be laid or may have heretofore been laid, upon any real estate now in said city, shall continue to be, until paid, a lien thereon, and shall be preferred in payment to all other charges."

Despite the city's willingness to rely upon its lien, it is contended that the taxes must be paid for the benefit of the second mortgagee. His theory is that current taxes are like other current expenses of the receivership, except that they are given preference over other claims, and hence must be first paid out of any funds in the receiver's hands for distribution. Particular reliance is placed upon Michigan v. Michigan Trust Co., 286 U. S. 334, 52 S. Ct. 512, 76 L. Ed. 1136, and MacGregor v. Johnson-Cowdin-Emmerich, Inc., 39 F.(2d) 574, 577 (C. C. A. 2). In the former, it was held that an annual franchise tax accruing during a conservation receivership should be paid by the receiver as it accrues because it is an "expense of administration" and therefore to be satisfied in preference to the claims of general creditors of the defendant in receivership. There the state had itself petitioned for payment of its claim. In the MacGregor Case, this court held that real estate taxes on property in the city of New York, which accrued after the appointment of receivers for conservation, were an "expense of operation" to be paid ahead of general creditors of the defendant. There a mortgagee was the moving party; the city having apparently been content to rely upon its lien. In obtaining an order that the taxes be paid, the mortgagee benefited pro tanto at the expense of the general creditors of the receivership defendant. In the case at bar, if the mortgagee obtains such an order, it will be at the expense of creditors of the receiver. Whether that is an adequate ground of distinction, as the appellees contend, we need not now decide, although it may be noted that in none of the cases which have been called to our attention, except Atkinson & Co. v. Aldrich Clisbee Co., 248 F. 134 (D. C. Mass.), has it appeared that payment of the tax was ordered where the result would be to leave insufficient to satisfy receiver's creditors. See First Nat.

Bank of Houston v. Ewing, 103 F. 168 (C. C. A. 5); Coy v. Title Guarantee & Trust Co., 220 F. 90, L. R. A. 1915E, 211 (C. C. A. 9); Bear River Paper & Bag Co. v. Petoskey, 241 F. 53 (C. C. A. 6); Union Trust Co. v. Great Eastern Lumber Co., 248 F. 46 (C. C. A. 5); McFarland v. Hurley, 286 F. 365 (C. C. A. 5); Hammond v. Carthage, etc., Co., 8 F. (2d) 35 (C. C. A. 2); Central Vt. Ry. Co. v. Marsch, 59 F.(2d) 59 (C. C. A. 1).

Assuming that current taxes assessed against property of Nestwood Estates, Inc., would be entitled to priority over creditors of its receiver in the distribution of property belonging to it, it must appear that property of that corporation is in the receiver's hands for distribution before any such question of priority can arise. As Judge Hough said in Kennebec Box Co. v. O. S. Richards Corp., 5 F.(2d) 951, 952 (C. C. A. 2), "there * * * can be no claim in favor of even the most preferred of creditors until there is some fund available for the payment of all creditors of the insolvent." Without impairing at all the doctrine of the MacGregor Case that a mortgagee may profit pro tanto by requiring current taxes to be paid in full, we hold that such mortgagee must show the existence of a fund available for making the payment. The appellant has failed to do so.

The receivership embraced property of several distinct corporations. Although one receiver was appointed for all, he held the property of each as a trust estate for the benefit of its own creditors and shareholders. Ames v. Union Pac. Ry. Co., 74 F. 335 (C. C. Neb.). It is self-evident that creditors of Nestwood Estates, and creditors of its receiver (assuming the city may be deemed his creditor in respect to unpaid taxes), are not entitled to share in funds realized from a sale of the assets of other corporations, and that the "expenses of operation" of the receiver of Nestwood Estates are not required to be paid out of property held on different trusts. As to the validity of payments already received by the appellant and other creditors of Nestwood Estates out of income derived from the restaurant corporations, we need say nothing. They were made and received in reliance upon court orders, and no one has questioned the recipients' right to retain what was paid them. But, as to future payments, the situation is different; they should be ordered only if a proper fund is available for their payment. It is doubtful if any of the purchase price obtained by the receiver was attributable to the property of Nestwood Estates, for the purchaser is said

to be ready to abandon it; but in any event the appellant has not shown that any of the fund now held for distribution was derived from that property. Hence he failed to prove that a fund was available for payment of the taxes in question.

As to unpaid installments of interest on the first and second mortgages, the appellant's contention is still less tenable. Not only must he fail for the reasons which defeat his claim for payment of the taxes, but his argument that accruing mortgage interest must be deemed an expense of operation by the receiver is fallacious. Installments of interest or principal which fall due on a mortgage during a conservation receivership do not become charges against the receiver. The mortgagee is not a creditor of the receiver but of the mortgagor. Nor can he successfully urge that he gives the receiver possession of the mortgaged premises by refraining from foreclosure. A mortgagee out of possession is only a lienor, and has no control of the property and no claim to its earnings, until he demands possession, or, if there is a receiver, gets the receivership extended for his benefit. See United States Trust Co. v. Wabash Ry., 150 U. S. 287, 14 S. Ct. 86, 37 L. Ed. 1085; Wolf v. De Wolf & Co., 53 F. (2d) 999 (C. C. A. 7).

For the foregoing reasons the order appealed from is affirmed.