## In re CHARLES NELSON CO.

## In re NORTHERN REDWOOD LUMBER CO.

Nos. 27277, 27503.

District Court, N. D. California, S. D.
May 25, 1939.

674

Philip S. Ehrlich, of San Francisco, Cal., for petitioners.

Sterling Carr, of San Francisco, Cal., for trustee.

Heller, Ehrman, White & McAuliffe, of San Francisco, Cal., for Wells Fargo Bank & Union Trust Co.

Chickering & Gregory, of San Francisco, Cal., for Detroit Trust Co. and McPherson Browning, trustees.

Lillick, Olson, Levy & Geary, of San Francisco, Cal., for Bondholders' Committee, Northern Redwood Lumber Co.

ST. SURE, District Judge.

The question is whether a trustee under Sec. 77B of the Bankruptcy Act as amended in 1934, 11 U.S.C.A. § 207, shall be required to pay as an administrative expense taxes, penalties, and interest charged against real property subject to an executory contract neither adopted nor rejected.

The Charles Nelson Co., a corporation, hereinafter called Nelson Co., having its principal place of business in San Francisco, was organized for the purpose of engaging in the steamship transportation business between seaports on the Atlantic and Pacific coasts and to certain foreign ports. This business was carried on through the Nelson Steamship Company, a corporation, a wholly owned subsidiary, which acted as agent. Nelson Co. also owned timberlands and a lumber mill at Port Angeles, Washington, which was closed down in July, 1930. Nelson Co. also owned all of the stock of various corporations engaged in the business of cutting timber and manufacturing lumber, among which was Northern Redwood Lumber Co., a corporation, hereinafter called Redwood Co.

Redwood Co. had its principal place of business at Korbel, Humboldt County, California, and was engaged in the business of cutting timber and manufacturing lumber. It owned extensive timberlands in Northern California and operated the Arcata and Mad River Railroad in connection therewith. The company defaulted in the payment of the interest on its bonds in June, 1935.

Nelson Co., being unable to meet its debts as they matured, began reorganization proceedings under Sec. 77B of the Bankruptcy Act on February 5, 1936 (No. 27277-S). Redwood Co., for similar reasons, commenced like proceedings on April 1, 1936 (No. 27503-S). Sidney M. Hauptman was appointed and qualified as trustee in both proceedings. On October 14, 1938, the trustees of the Merryman Estate Trust, successors to Merryman Fruit, Land & Lumber Co., a corporation, hereinafter called Merryman Co., filed in each proceeding a petition asking, among other things, that the court direct Hauptman as trustee to pay forthwith all taxes, interest, and penalties that have accrued under the contract hereinafter described, since the inception of the 77B proceedings. Answers were filed by trustee Hauptman in both proceedings; and by Detroit Trust Company and McPherson Browning as trustees under first mortgage or deed of trust securing 6% gold bonds, in Redwood Co. proceeding. The issues in both matters were heard and will be considered together.

Merryman Co., on April 30, 1924, entered into an agreement with Nelson Co., by the terms of which the former agreed to sell, and the latter agreed to buy 12,746 acres of timberland for $1,500,000. The sum of $200,000 was to be paid upon execution of the agreement; $125,000 on May 1, 1925; $75,000 on May 1st of each succeeding year to and including May 1, 1940; $50,000 on or about May 1, 1941, which would complete payment; in 1930, under the terms of the contract, there was a deferment of one annual installment, postponing maturity until 1942. All deferred installments were to bear interest at the rate of 5% per annum, payable on May 1st of each year beginning 1925. The contract provided that if Nelson Co. failed strictly and literally to perform its agreements, Merryman Co. would be relieved of its obligation to convey the property, and Nelson Co. would forfeit all rights under the contract and any moneys paid thereunder as liquidated damages. A deed to the property was executed and placed in escrow.

On August 17, 1925, Redwood Co., desiring to provide for new capital, entered into an agreement with Detroit Trust Co. Thereafter Redwood Co. executed and delivered to Detroit Trust Co. and McPherson Browning as trustees a first mortgage deed of trust securing an authorized issue of $3,500,000 6% first mortgage gold bonds of which there are now issued and outstanding bonds in the principal amount of $1,700,400. In said mortgage mention is made of the Merryman contract as follows: "Whereas, as the Company is not seized of a fee simple title to the so-called 'Merryman Tract,' but has an equitable interest only therein by virtue of a certain contract dated April 30th, 1924, the Company, as additional security for the payment of said bonds * * * has assigned all of its right, title and interest in said contract to Trustee."

On November 27, 1925, Nelson Co. assigned its interest in the Merryman contract to Redwood Co.

On December 30, 1930, Merryman Co., Nelson Co., Redwood Co., and Detroit Trust Company and McPherson Browning, as trustees, entered into an agreement whereby certain lands owned by Redwood Co., which were subject to the indenture securing its bonds, were exchanged for certain of the Merryman lands. These exchanges increased the total acreage of the Merryman tract to 13,836.64, upon which it is estimated there is 758,822,000 feet of timber.

On May 29, 1936, this court made an order in Nelson Co. proceeding requiring creditors to file their claims before August 5, 1936, notice of which was given as provided by law, but petitioners filed no claim. Following a similar order and notice in Redwood Co. proceeding, petitioners, on September 3, 1936, filed a verified claim designated "Secured Claim upon Purchase Price Due under Land Contract"; said claim describes in detail the making of the contract of April 30, 1924, between Merryman Co. and Nelson Co., and the assignment thereof by Nelson Co. to Redwood Co. on November 27, 1925; said claim states that Nelson Co. and Redwood Co. had made certain payments upon principal and interest of the purchase price as follows: $700,000 on the principal, and $485,594.79 for interest; that there are taxes which are a lien upon the property due and unpaid in the sum of $6,486.44; and that there is due under the contract the principal sum of $450,000 together with interest and a further principal payment not yet due in the sum of $350,000.

Petitioners had knowledge of the separate proceedings under 77B begun by Nelson Co. and Redwood Co. respectively. They filed a claim as required by law on the executory contract in the latter proceeding, but failed to file in the former. In the circumstances here they are barred from participation in Nelson Co. proceeding.[1]

In a tardy attempt to fasten liability upon the trustee of Nelson Co., petitioners urge that the respective corporate entities of Nelson Co. and Redwood Co. be disregarded and the two deemed one. Attention is called to the facts that Nelson Co. owned all of the capital stock of Redwood Co.; that James Tyson was active in both companies and controlled their business policy; and that Nelson Co. acted as the sales agent and banker of the major portion of Redwood Co.'s business. There is additional argument to the same effect, all of which is impotent in the face of the undisputed salient facts and the law. The corporations were separately organ-

[1] Section 77B(b)(10); § 77B(c)(6), Act of 1934, 48 Stat. 912, 11 U.S.C.A. § 207(b)(10), (c)(6).

ized. They were formed for different purposes and had their principal places of business in different localities. They had separate offices and kept separate sets of books. A corporation exists as an entity, and "courts of law will not go beyond the fact of corporate existence in order to examine the real ownership of a corporation."[2]

Further discussion will relate to petitioners' two remaining points as applied to Redwood Co. proceeding. The first is stated as follows: "A trustee operating and conducting a debtor's estate under section 77B of the Bankruptcy Act must pay as an expense of administration, local taxes assessed and levied against all property in his possession, together with the interest and penalties assessed by reason of their non-payment."

The entire supporting argument is built upon the wording of a statute providing that a trustee appointed by the court to conduct a business, or who conducts a business, shall be subject to all applicable state and local taxes.[3]

It is admitted, as stated in petitioners' brief, that Nelson Co. assigned the Merryman contract to Redwood Co.; that Redwood Co. regarded the equity in the contract as an asset and mentioned it in the prospectus of 1925 regarding the issuance by it of $3,500,000 first mortgage 6% gold bonds. It is further admitted that Redwood Co. was primarily engaged at that time in "owning and holding timberlands, in logging operations thereon, and in the sale and disposal of lumber." But these admitted facts do not establish that by virtue of his appointment and qualification as trustee Hauptman was authorized by the court to conduct a business with reference to the equity in the Merryman contract, or that he did conduct such a business. The prospectus also shows that Redwood Co. owned "approximately 37,902 acres of timberland in fee simple, together with sawmills, manufacturing plants, logging railroads and equipment." The Merryman contract was mentioned as the "assignment of the present equity of The

Charles Nelson Co." in the timber contract consisting of approximately 12,746 acres. The value of the Redwood Co. property was given as $6,820,000. The value of the Merryman timber was estimated at $2,021,000. It should be remembered that the timber on the Merryman tract has at all times and now comprises what timbermen call a "virgin stand." Its extent has since 1924 been augmented by exchanges until the total acreage is now 13,836.64. It is admitted that the timber remains in its pristine condition, not a tree upon the tract having been cut.

Attention is called to a letter written by trustee Hauptman to Mr. Olmsted, one of petitioners herein, in which the Merryman timber is mentioned as showing conclusively "that the trustee in his conduct of the debtors' business had at the very least constructive possession of the Merryman tract." The letter does not bear the interpretation suggested. The letter shows that Mr. Hauptman was at one time considering the advisability of including the Merryman lands in a tentative plan of reorganization which was never consummated. The Merryman lands are not now being considered in any plan for reorganization. In this regard Mr. Hauptman testified in part as follows: " * * * there is a tentative agreement, a memorandum of agreement, which has been executed between the Bondholders' Committee of the Northern Redwood Company, with two principal bank creditors and myself as trustee of the Northern Redwood Lumber Co., and myself as representing The Nelson Company as a creditor, and provision [is made] for the borrowing of a large sum of money for the rehabilitation and refinancing of a reorganized company. In that refinancing there has not been given any consideration to carrying out of the purchase or completion of the Merryman contract. * * * In other words, the big body of timber we are discussing in the reorganization at the present time is what we call the North Fork timber."

"The sole question here to be determined," conclude petitioners, "is whether

[2] In re Fox West Coast Theatres, 9 Cir., 88 F.2d 212, 227; Ramish, Inc., v. Laugharn, 9 Cir., 86 F.2d 686, 688; Exchange Nat. Bank v. Meikle, 9 Cir., 61 F.2d 176, 180.

[3] 28 U.S.C.A. 124a, reading in part as follows: "Any receiver, liquidator, referee, trustee, or other officers or agents appointed by any United States court who is authorized by said court to conduct any business, or who does conduct any business, shall, from and after June 18, 1934, be subject to all State and local taxes applicable to such business the same as if such business were conducted by an individual or corporation: * * *."

or not the debtors' trustee has brought himself within the provisions of Sec. 124a of Title 28 of the United States Code [28 U.S.C.A. § 124a]. It is true that the trustee did not physically operate the property, but this is not the real factor which governs the determination of the debtors' liability. The trustee did, however, conduct the debtors' business."

Cases are cited[4] holding that if one accepts the benefits, he must bear the burdens; when a receiver "operates" the property, current taxes are to be regarded as ordinary expenses of operation; taxes on property "taken over and used by the trustees under order of court in the conduct of their own operations and for the benefit of general creditors" are ordinary carrying charges; "the taxes become fixed by reason of the operation of the business by the trustees."

These rules state the law, but are not applicable here. When Hauptman qualified as trustee of Redwood Co. he was, by operation of law, vested with the title to the debtor's property, including the rights to the Merryman lands subject to the terms of the executory contract. The Merryman lands consisted of a large tract of uncut timber, separate and apart from any business of Redwood Co. The trustee never received nor accepted any benefits from the Merryman property, nor did he "operate" it. He never used nor occupied the property. He never took over the property under order of court and operated it for the benefit of creditors. He never received any profit, rent, return, nor income from the property. As heretofore stated, not a stick of timber has been removed from the Merryman tract. The land, except for the addition of 1000 acres and the timber upon it, except for natural growth or decay, remains as it was when the original contract of sale was made on April 30, 1924.

The relationship between the parties under the provisions of the executory contract is similar to that of mortgagor and mortgagee.[5] In an equity receivership case, Pacific Western Oil Co. v. McDuffie, 9 Cir., 69 F.2d 208, 213, it was said to be "a general rule that a receiver does not affirm and adopt an existing contract merely by taking possession of the property to which it relates along with other property of the estate. * * * In order for a receiver to become bound by a contract, he must positively indicate his intention to adopt it; the receiver is not bound until he has affirmed it and assumed its burdens under the direction of the court." In another case, Mortgage Loan Co. v. Livingston, 8 Cir., 78 F.2d 517, 521, it was said that "the receiver in bankruptcy took the property subject to the mortgage liens thereon. These liens could not be displaced. But to take property subject to liens is very different from 'assuming and agreeing to pay' those liens." Taxes here are a lien upon the real property. "There is no equitable rule by which the personal property assets of a bankrupt estate may be exhausted in order to protect the mortgage."[6] Ingels v. Boteler, 9 Cir., 100 F.2d 915, cited by petitioners, held that taxes may be assessed and become a lien upon property of a bankrupt used in the operation of the business under order of court, and that the taxes and penalties must be paid or the property disposed of subject to the lien. This holding supports the conclusion reached herein.

The last point which will be noticed is stated by petitioners as follows: "Where a trustee of a debtor in corporate reorganization proceedings neither adopts nor rejects an executory contract for the sale of real property, but obtains orders of court extending time to adopt or reject the contract, thereby retaining the same for the actual or potential benefit of his trust estate, said trustee must pay as an expense of administration local taxes levied against such property, together with the interest and penalties assessed by reason of their non-payment."

This point may well have been considered with the first, as petitioners' present argument is mainly based upon the use and

---

[4] Drips v. Moore, 179 Cal. 249, 252, 176 P. 159; Hennepin County, Minn., v. M. W. Savage Factories, 9 Cir., 83 F.2d 453; In re Humeston, 2 Cir., 83 F.2d 187; In re Preble Corp., D.C., 15 F. Supp. 775; Central Vermont Ry. Co. v. Marsch, 1 Cir., 59 F.2d 59, 61; Ingels v. Boteler, 9 Cir., 100 F.2d 915; Dayton v. Stanard, 241 U.S. 588, 36 S.Ct. 695, 60 L.Ed. 1190.

[5] Longmaid v. Coulter, 123 Cal. 208, 55 P. 791.

[6] Torrington Co. v. Sidway-Topliff Co., 7 Cir., 70 F.2d 949, 954; See, also, Dulberg v. Zankel, 2 Cir., 67 F.2d 534; Title & Trust Co. v. Wernich, 9 Cir., 68 F.2d 811.

occupation theory, a profit inuring to the debtors' estate through such possession. It is unnecessary to repeat the facts and reasons which destroy such position. The present contention merits notice merely because of an appeal to the equities of the situation. It is intimated that the trustee was remiss in his duty in delaying bringing before the court the matter of the adoption or rejection of the contract. "It must be remembered," argue petitioners, "that since the time of his appointment the trustee has had a contract right of great value at his disposal without compensating petitioners for the privilege of retaining that right. Viewed from still another light it appears that the trustee not only has retained this right, but has prevented petitioners from exercising their rights as owners of the legal title to the property without in any way paying for the right to withhold the property from petitioners. It does not appear that the maintenance of such a valuable contract right without the passing of some consideration to the other contracting party is at all fair and equitable."

Such argument is neither supported by evidence nor sanctioned by law. The trustee could not legally, and did not, in fact, prevent petitioners from exercising their rights as owners of the ·legal title. It is true that the court, at trustee's request, has extended the time in which to adopt or reject the contract, but that did not prevent petitioners from acting. Petitioners filed their claim on September 3, 1936, setting forth that there was due on the principal of the contract $450,000 and interest; taxes due, unpaid, and a lien on the real property, $6,486.44; a further principal payment not yet due of $450,000. Petitioners knew of the inability of Redwood Co. to assume and pay the obligations under the contract. Upon filing their claim, they were entitled to take part in the proceedings. Application might have been made to the judge to compel the trustee to perform or reject the executory contract. Rejection of the claim is in the hands of the judge.[7] Under suitable proceedings the· equities of the contract might have been foreclosed.

When Nelson Co. and Redwood Co. filed petitions for reorganization ·under 77B it appeared that both were hopelessly insolvent. This is shown by the proceedings before this court, of which judicial notice is taken. The trustee has labored diligently and intelligently not only to pay the secured creditors, but to save something from the wreck for the general creditors and the stockholders. It is possible, if certain compromises and loans are effected with the aid of the large secured creditors, eventually something may be paid upon the claims of the unsecured creditors and a portion of the property salvaged for the benefit of the stockholders. The facts of the situation are commonly known, and doubtless petitioners are fully advised.

The evidence adduced at the hearing shows that prior to the 77B proceedings there was paid upon the principal of the contract $700,000; for interest, $486,-167.71; and for taxes, $93,945.51; a total of $1,280,113.22, all for the benefit of the Merryman property.

There has accrued during 77B proceedings on principal $225,000; for interest, $116,666.66; for taxes, $24,383.69; a total of $366,050.35.

The contract provides that in case of default the vendor is relieved of its obligation to convey the land, and the vendee waives all rights and all moneys theretofore paid.

Should petitioners pursue and obtain the rights secured to them by the contract, they would retain 13,836.64 acres of virgin timberland of the estimated value of $2,021,000 in addition to $1,186,167.71 paid upon principal and for interest, and almost $100,000 paid in taxes for the benefit of the land.

In the contemplation of the rights secured by the contract and these figures, petitioners' charge of inequitable treatment disappears. To grant petitioners' demands would be to fly in the face of the facts and give them an unfair advantage.

Both petitions will be denied.

The trustee having asked to be advised as to his rights in the premises, he is instructed to reject the executory contract of April 30, 1924. If so advised, petitioners may, within twenty days from date of notice of said rejection, file in Redwood Co. proceeding an amended claim setting forth any damages claimed by them.

[7] Gerdes on Corporate Reorganizations, Vol. 2, p. 1144, Sec. 697, and p. 1175, Sec. 713 et seq.